```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DWAYNE MYRICK,
                    Petitioner,
        -against-                          ORDER
                                           06-CV-2418 (JS)
VINCENT DEMARCO,

                    Respondent.
----------------------------------X
APPEARANCES:
For Petitioner:    Valerie A. Hawkins, Esq.
                   77 Saint Pauls Road North
                   Hempstead, NY 11550

For Respondent:    Glenn D. Green, Esq.
                   Suffolk County District Attorney's Office
                   Criminal Courts Building
                   200 Center Drive
                   Riverhead, NY 11901
```

SEYBERT, District Judge:

Petitioner Dwayne Myrick commenced this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the foregoing reasons, Mr. Myrick's petition is DENIED.

BACKGROUND

On September 5, 2002, uniformed Suffolk County Police Officers Brian Kopke and Carmine Coppola responded to a domestic violence complaint at 351 State Avenue, Wyandanch, New York. Resp. Answer ¶ 4. Arriving around noon, the officers met with Petitioner's sister-in-law, Myka Adul. Id. Ms. Adul told the officers that Petitioner had gotten into a domestic disturbance with his wife that culminated in Petitioner slapping or hitting her. Id. As the officers spoke with Ms. Adul, a brown car

drove towards them on the street. Id. at ¶ 5. Ms. Adul identified the car as Petitioner's, and the officers began to run towards it. Id. Upon seeing the police coming, the car made a u-turn and drove in the opposite direction. Id. The officers then got in their car, put on the overhead lights and pursued Petitioner's vehicle. Id.

Eventually, Petitioner stopped driving. Id. at ¶ 6. Exiting his car, Petitioner screamed at the officers "Mother fucker, it will take all of you to take me on." Id. Petitioner then pushed Officer Kopke. Id. In response, Officer Kopke attempted to arrest Petitioner. Id. But, rather than comply with Officer Kopke's instructions, Petitioner clasped his hands together and started screaming. Id. Eventually, the officers wrestled Petitioner to the ground and successfully arrested him.

On January 31, 2003, Petitioner was convicted of: (1) one count of Disorderly Conduct; (2) two counts of Resisting Arrest; and (3) one count of Harassment in the second degree. Id. at ¶ 3. Petitioner's Disorderly Conduct and Harassment convictions are violations. See N.Y. Penal Law §§ 240.20, 240.26. His Resisting Arrest conviction is a class A misdemeanor. See N.Y. Penal Law § 205.30. On December 29, 2005, the New York Appellate Division, Second Department affirmed Petitioner's conviction. See 814 N.Y.S.2d 564 (Table),

2005 WL 3620673. On February 27, 2006, the New York Court of Appeals denied Petitioner leave to appeal. 6 N.Y.3d 816.

Petitioner then commenced this petition, contending that his convictions: (1) violated his Fourth Amendment right to be free from unreasonable searches and seizures; (2) his Sixth Amendment right to trial by jury; and (3) his Fourteenth Amendment right to due process.[1]

## DISCUSSION

I. <u>Federal Habeas Review of State Convictions</u>

Petitioner filed this action after the April 24, 1996, effective date of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, AEDPA's provisions apply to his case. <u>Williams v. Taylor</u>, 529 U.S. 362, 402, 120 S. Ct. 1479, 1518, 146 L. Ed. 2d 389 (2000). Under the provisions of 28 U.S.C. § 2254(d), a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court

---

[1] Petitioner purports to seek relief under "42 U.S.C. § 2241." Pet. Mem. at 1. But, as far as the Court knows, Petitioner did nothing to threaten the United States' "atomic safety." <u>See</u> 42 U.S.C. § 2241. Because Petitioner was in state custody, the Court presumes that he meant 28 U.S.C. § 2254.

3

proceeding." 28 U.S.C. § 2254(d). This deferential review is applied as long as the "federal claim has been 'adjudicated on the merits' by the state court." Cotto v. Herbert, 331 F.3d 217, 231 (2d Cir. 2003). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002) (internal citations and quotations omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (internal citations and quotations omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Penry, 532 U.S. at 792. Accordingly, "a federal habeas court

4

may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams, 529 U.S. at 411.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). As a result, Petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." Id. This is "particularly important when reviewing the trial court's assessment of witness credibility." Cotto, 331 F.3d at 233 (internal citations and quotations omitted).

II. Mootness

The Court did not decide Petitioner's motion during the short period he remained in custody. Thus, the Court must consider whether Petitioner's release mooted this action. The Court finds that it has, in part. To the extent that Petitioner challenges his Disturbing the Peace and Harassment convictions, these claims are now moot because unlike felonies, violations carry no collateral consequences. See Meister v. N.Y. State AG, 06-CV-0090, 2007 U.S. Dist. LEXIS 98605, *12-13 (W.D.N.Y. Sept. 6, 2007). The law is less clear with respect to misdemeanors. As a general matter, whether misdemeanors impose collateral consequences, and thereby enable released offenders to maintain

5

habeas petitions, is a case-by-case inquiry. Specifically, the Court must examine whether a state or professional body will permanently penalize the misdemeanant, such as by precluding him from engaging in certain professions. See generally Nakell v. Att'y Gen. of N.C., 15 F.3d 319, 323 (4th Cir. 1994) (no mootness because attorney's misdemeanor could subject him to disciplinary proceedings); Meister, 2007 U.S. Dist. LEXIS 98605, *13 (fact that offense might enhance the penalty for a subsequent crime not enough to show collateral consequences).

Here, the parties have not briefed what collateral consequences might flow from Petitioner's misdemeanor conviction. Thus, the Court will not reach this issue. Instead, assuming arguendo that Petitioner's claims remain viable, the Court finds that they are without merit.

III. The Merits

    A. Petitioner's "Reasonable Suspicion" Claim

Petitioner first contends that the police lacked reasonable suspicion to initially detain him, and thus violated his Fourth Amendment rights. But this claim is barred because Petitioner had a full and fair opportunity to litigate it in state court. See Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). And the state court's decision was neither contrary to clearly established Federal law, nor "unreasonable . . . in light of the evidence presented." 28 U.S.C. § 2254(d).

In any event, this claim is without merit. The police stopped Petitioner because Ms. Adul, who identified herself as Petitioner's sister-in-law, informed them that Petitioner slapped or hit his wife. Thus, the police had reasonable suspicion to believe that Petitioner had committed a crime. See U.S. v. Elmore, 482 F.3d 172, 180 (2d Cir. 2007) ("The veracity of identified private citizen informants . . . is generally presumed in the absence of special circumstances suggesting that they should not be trusted."); U.S. v. Lowe, 838 F. Supp. 55, 57 (W.D.N.Y. 1993). And, consequently, this claim fails.

B. Petitioner's Sixth Amendment Claim

Petitioner also contends that the trial court violated his Sixth Amendment rights by not permitting the jury to find, beyond a reasonable doubt, that the police had "probable cause" to arrest Petitioner, which Petitioner contends is an element in a Resisting Arrest offense. Again, Petitioner is wrong.

The trial judge properly instructed the jury that, in order to find Petitioner guilty of Resisting Arrest, the Government must prove "beyond a reasonable doubt" that "the defendant prevented or attempted to prevent a police officer from effecting the authorized arrest of himself." Pet. ¶ 45. And the trial judge further instructed that "An arrest is authorized when the police officer making the arrest has reasonable cause to believe that the person being arrested has

7

committed a crime" and that "Reasonable causes exists when a police officer has knowledge of facts and circumstances sufficient to support a reasonable belief that a crime has been or is being committed." Id. In so doing, the trial court properly instructed the jury that – in order to find Petitioner guilty of Resisting Arrest -- it first needed to find that the police had "reasonable cause" to arrest Petitioner. Petitioner has failed to show that these instructions violate any clearly established Federal law. And, in fact, the trial court's charge closely mirrors New York's pattern jury instructions for Resisting Arrest.[2]

Petitioner further contends that the trial court's instructions "erroneously focused the jury's attention solely on the events that occurred after police officers stopped [Petitioner]" and precluded the jury from deciding "whether the officers were performing a lawful duty when they pursued him and forced him to stop his vehicle." Pet. Mem. at 12. But Petitioner points to no clearly established Federal law (or, for that matter, New York law) requiring a jury to decide if a temporary detention complies with the Fourth Amendment. And the law is contrary. See U.S. v. Donaldson, 793 F.2d 498, 503 (2d

---

[2] See http://www.nycourts.gov/cji/2-PenalLaw/205/205-30.pdf (last visited February 17, 2010).

Cir. 1986) (trial court can decide Fourth Amendment rights questions "as a matter of law").

As a result, this claim also fails.

C. <u>Petitioner's Confrontation Clause Claims</u>

Petitioner further argues that the trial court improperly permitted the People to establish probable cause through hearsay testimony, in violation of his Sixth and Fourteenth Amendment rights to confront the witnesses against him. Specifically, Petitioner contends that the People offered "no proof of probable cause" other than Officer Kopke's testimony that Ms. Adul told him that Petitioner hit his wife. Pet. Mem. at 14. Again, Petitioner is wrong. The probable cause to arrest Petitioner did not stem from Ms. Adul's hearsay statement, or from any allegations of domestic abuse. Rather it flowed from Petitioner's own disorderly conduct and harassment, such as when he "yelled curses at the officers" and stated "you know, it's going to take more than two of you guys to take me out." <u>Myrick</u>, 2005 WL 3620673, *1 (2d Dep't 2005) (Petitioner's "own actions" established probable cause).

Thus, Petitioner's Confrontation Clause claim is likewise without merit.

D. <u>Petitioner's Sufficiency of the Evidence Claims</u>

Finally, Petitioner contends that Officer Kopke's testimony was "biased and incredible," "fabricated," and

9

reflected a "brazen mendacity." Pet. Mem. at 16. But "[t]he credibility of witnesses is a question to be resolved by the jury, not by a reviewing court." U.S. ex rel. Morton v. Mancusi, 393 F.2d 482, 484 (2d Cir. 1968). Thus, the fact that the jury believed Officer Kopke did not violate any clearly established federal law.

## CONCLUSION

Petitioner's petition is denied in its entirety. A Certificate of Appealability is DENIED. The Clerk of the Court is directed to mark this matter as CLOSED.

SO ORDERED.

/s/
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
February 19, 2010

10